## HOFFMAN a. DELIHANTY.

*Supreme Court; General Term, May,* 1848.

### WITNESS.—USE AND OCCUPATION.

An agent *held* to have acted within his instructions; and that therefore, not being personally liable upon the contract, he was not incompetent as a witness in respect to the transaction, by reason of any interest.

Under 1 Revised Statutes, 748, § 26, providing that "any landlord may recover, in an action on the case, a reasonable satisfaction for the use and occupation of any lands or tenements, by any person under any agreement not made by deed," the action for use and occupation may be maintained, if the defendant either held or occupied the premises. It was formerly well settled that the action would lie where the lands were held by the defendant without being actually occupied, and this provision of the Revised Statutes does not alter the rule.

The cases of Wood a. Wilcox (1 *Denio*, 37) and Beach a. Gray (2 *Ib.*, 84), explained.

Motion to set aside the report of a referee.

The facts are stated in the opinion.

*Nicholas Hill, Jr.,* for the plaintiff.

*Edward Hoffman,* for the defendant.

BY THE COURT.*—McKISSOCK, J.—This case came up on a motion to set aside a report of a single referee. The action was for use and occupation of a wharf in the city of Albany.

On the trial the plaintiff produced as a witness one Provost Veazie, who swore that in 1843 he was the general agent of defendant to take care of his steamboat Swallow in Albany, to which place she ran; that defendant had a place there to pile his wood for the boat, which witness hired of plaintiff's testator, first by the month, and afterwards by the season, for $65. They piled the wood on the place. It was necessary for the use of the boat. This was in the spring; and the season was to last

---

* Present, BEARDSLEY, P. J., McKISSOCK and WHITTLESEY, JJ.

till May or June next season. The defendant himself paid for the time while it was hired by the month.

On his cross-examination he said he thought they occupied it about a month after they took it by the season. He had never hired a dock before by the season, as he was not the general agent. He was at this time employed to do defendant's business there, and thought he had a right to hire by the season. At the "start" defendant told him he had better hire by the month. But he afterwards hired by the season, because Delihanty would not hire it any longer by the month, and they could get no other place. He did not remember whether he had received orders of the defendant to hire by the season or not. He did not remember that he swore on a former trial that they occupied the wharf but two weeks after they hired by the season, nor that he then said that the season ended in January. Said the reason they quit the wharf was, that the defendant changed his mind, and ran the boat to Troy.

The defendant's counsel then moved the referee to strike out the testimony of the witness on account of his interest, he having made himself personally liable. This the referee refused.

The defendant called a witness, who swore that Veazie on a former trial testified that they had occupied the wharf two weeks under the hiring by the season, and that the season ended first of January.

The defendant's counsel insisted that Veazie had no authority to hire the wharf by the season; and that at all events plaintiff could recover, in this form of action, only for the time actually occupied.

The plaintiff's counsel insisted upon the reverse; and the referee reported in favor of plaintiff $75.61, which covered the time the wharf was unoccupied.

Two questions present themselves in this case: Was Veazie a competent witness? and, Could the plaintiff recover, for use and occupation, rent accruing while the defendant was not in the actual occupation of the premises?

Veazie was the agent of the defendant; and it is contended that he made himself personally liable on the agreement, and is therefore incompetent for interest. He had the charge of the business of the defendant in respect to his steamboat in Albany, which was then running to that place. He was his servant

there in relation to his business generally, and not to perform any single act in relation to it; being, in fact, his general agent within the definition of general agency as given in all the books. (*Chit. on Cont.*, 2 ed., 215, 216; *Story on Agency*, 17, 126; *Paley on Agency, by Lloyd*, 3 ed., 2, 199.) And there being no pretence that he concealed his principal, contracted in his own name, or was guilty of fraud, the principal was bound and not the agent, provided he acted within the scope of his general authority, though he may have surpassed or disregarded particular instructions. (*Chit. on Cont.*, 126; *Story on Agency*, 126, 127, 261; note to *Lloyd's Paley on Agency*, 3 ed., 199.)

But it was not even shown that the witness Veazie violated the private directions of the defendant. The evidence was, that he told the witness at first, that he had better hire the wharf by the month, which he did; but that afterwards he hired by the season, because there was none other to be found or obtained, and Delihanty would then only hire by the season. This was but exercising a discretion fairly implied, and indeed plainly expressed by the word "better" in the instruction. The referee was correct in retaining the testimony of Veazie.

The remaining inquiry is, Could the plaintiff recover for use and occupation while the defendant did not actually occupy the premises? As the defendant went into possession under the agreement, there can be no doubt of the right so to recover, unless, as is contended by the defendant's counsel, the Revised Statutes have altered the law in that respect. (Jones *a.* Reynolds, 7 *Car. & Payne*, 335; Wooley *a.* Watling, *Ib.*, 610; Little *a.* Martin, 3 *Wend.*, 219; Featherstonhaugh *a.* Bradshaw, 1 *Ib.*, 134; *Chit. on Cont.*, 6 ed. 371; Gibson *a.* Counthorpe, 1 *Dowl.& Ryl.*, 205; Baker *a.* Holtpzaffell, 4 *Taunt.*, 45; Wood *a.* Wilcox, 1 *Den.*, 37.)

Though there is a change of the language introduced in the Revised Statutes in relation to the action for use and occupation, yet I apprehend there was no intention to change the law in that respect. The provision in the Revised Laws (1813, 444) is as follows: "It shall be lawful to and for the landlord, his heirs and assigns, where the agreement is not by deed, to recover a reasonable satisfaction for lands, tenements, or hereditaments, held or occupied by the defendant, in an action on the case for the use and occupation of what was so held and enjoyed." The

correspondent provision in 1 Revised Statutes (1 ed., 748, § 26) is thus : " Any landlord may recover in an action for the use and occupation of any lands or tenements by any person, under any agreement not made by deed," &c. : the difference between the two statutes being that the first declares that any landlord, &c., may recover satisfaction for any lands " held or occupied," in an action for use and occupation ; while the last provides that a like recovery may take place for the use and occupation of any lands, leaving out the words of description in the first, that the lands are held and occupied. Hence it is insisted that, though under the Revised Laws the action would lie where the lands were either held or occupied, under the present statute they must be actually occupied, as the word *held* is omitted. But the courts, both in England and in this State, had from the 11th Geo. II., uniformly held the rule to be, that a person either holding or occupying was liable to the action. It follows, then, that use and occupation from that date till the passage of the Revised Statutes was, both by the statute and the judgments of the courts, the known and appropriate form of action, where the premises were either held or occupied. And the Legislature appear to have assumed this well-known rule of law as the basis of the provision on the subject in the Revised Statutes. And accordingly, omitting altogether that part of the old statute designating the purpose of the enactment to be to provide a remedy where lands were " held or occupied," it proceeds directly to declare that a reasonable satisfaction may be recovered for the use and occupation of any lands, &c.; in all which I think there appears a manifest intention to retain the action in all cases where it was then in use.

Let us now proceed to advert to some arguments that may be drawn from extrinsic circumstances and considerations, to show that the Legislature did not intend to alter the law from what it was before the revision of 1830.

In the first place the statute was originally remedial; and as it had been beneficent in its operation, there was no motive to limit its application. The revisors have left no note of an intention to alter the law, which we argue they would have done if any such intention existed. And the well-settled rule of interpretation so forcibly expressed in the following citation from the opinion of a most eminent judge, admonishes us to be slow

in adopting a belief of so important an innovation upon a long-settled principle as is here contended for: " Where a law antecedently to a revision of the statutes is settled, either by the expressions in the statutes or adjudications on them, the mere change of phraseology shall not be deemed or be construed a change of the law, unless such phraseology evidently purports an intention in the Legislature to work a change." (Per KENT, Ch. J., in the case of Yates, 4 *Johns.*, 317, 359 ; see, also, *Ex parte* Brown, 21 *Wend.*, 316, per BRONSON, J.)

But the defendant's counsel referred us to the cases of Wood *a.* Wilcox (1 *Den.*, 37) and Beach *a.* Gray (2 *Ib.*, 84), as giving countenance to his interpretation of the Revised Statutes on the point now in question. In the first of these cases, neither the defendant nor any one under him, had ever taken possession of the premises under the agreement; and the court decided that the action would not lie for use and occupation. Mr. Justice Beardsley, who delivered the opinion of the court, discussed the case solely on the question whether, under the 11th Geo. II., and our Revised Laws of 1813, which were like it, and had received the same interpretation, the action could be maintained where possession had never been taken, and proved most conclusively that it could not. And he expressly waived all aid in the argument from the Revised Statutes, though he intimated that the position contended for might be stronger under them if any change had been intended and made, of which he suggested the appearance, as the present statute of New York (Revised Statutes) was variant from the 11th Geo. II., and the Revised Laws. But finally, the whole that is said in relation to the suggested alteration is summed up in this: "The words of the present statute of New York would seem to require an actual and continual occupation during the whole period for which the party is allowed to recover. But I need not insist on any distinction between this statute and that of the 11th Geo. II.; for, under the latter, a recovery cannot be had where no entry was made nor possession taken. An agreement to take is not sufficient."

The other case (Beach *a.* Gray) may be stated thus: Gray had hired the premises of the plaintiff from May, 1842, till May, 1843, and went into the possession, which he abandoned in October, 1842. After the possession had been so abandoned, the plaintiff gave notice to the defendant that he would lease the

premises and hold him responsible for any loss. Of this the defendant took no notice ; and the plaintiff let to one Penniman, without the consent of the defendant. And the court decided that the action could not be maintained against defendant for the time of the occupation of Penniman. The same learned judge delivered the opinion, in which all that is said having any relation to the present question is as follows : "The statute of this State, authorizing an action for use and occupation, is certainly not more extensive than that of England on the same subject. Under the latter, the plaintiff can recover in this form of action for such time only as the defendant actually occupied the premises, or *held*, that is, legally possessed them ;" thus simply reiterating with great caution and precision the doctrine of the case of Wood *a.* Wilcox. It had been shown in that case, that there could be no holding and legal possession without an actual occupation, unless there had been an entry under the agreement.

Thus the doctrine contended for by the defendant's counsel receives no support from the cases in Denio, any farther than what may be derived from a passing remark of the judge, opportunely made, as to the change of phraseology in the new statute, which, however, was not material to the case in hand, and which he declared had no effect on his judgment. And I may here add that the determination of the court on this point, in the present case, has the approbation of the same learned judge.

The motion to set aside the report of the referee must be denied.

## JONES *a.* UNDERWOOD.

*Supreme Court, First District ; General Term, Sept.,* 1861.

### FORMER ADJUDICATION.

Where the defence interposed was a former judgment upon the merits, and it appeared that in the former action the plaintiff had applied for a discontinuance,